IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

XAVIER HERSOM, et al.,

    Plaintiffs,

v.                                                      CIVIL ACTION NO.  2:21-cv-00450

BILL J. CROUCH, et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff John Doe's Motion to Proceed Anonymously [ECF No. 2] and for entry of a protective order preventing Defendants from revealing his name in public filings or documents. [ECF No. 2-1]. The motion is unopposed. Mr. Doe and his co-plaintiff, Xavier Hersom, are transgender men. They filed this action seeking injunctive relief to require the West Virginia Department of Health and Human Resources ("DHHR") to allow them to change the gender marker on their birth certificates to match their gender identity. Plaintiffs also seek injunctive relief to require that updated West Virginia birth certificates do not reflect that changes have been made. Mr. Doe seeks anonymity to avoid disclosure of his status as a transgender man.

A person's transgender status is a highly sensitive and personal matter and revealing it can subject them to mental and physical harm. Mr. Doe has agreed to reveal his identity to Defendants in this case to avoid any prejudice. Because Mr.

Doe's anonymity in this case will not prejudice Defendants and revealing his transgender status will subject him to substantial risk of mental and physical harm, his motion to proceed anonymously is **GRANTED**.

## I. Background

In West Virginia, the procedure to change a birth certificate is set by rules promulgated by the DHHR. [ECF No. 1, at ¶ 40-41]. The DHHR allows people to change the name on their birth certificate by providing proof of their legal name change or proof that the name as written on the birth certificate is wrong. *Id,* at ¶ 42. Upon receipt of a petitioner's proof, the DHHR will then provide the petitioner with an updated birth certificate with the original name crossed out and the new name written above it. The same is true with other corrections. *Id.* at 47. DHHR will not, however, change the gender marker on a birth certificate absent an order from a West Virginia circuit court. *Id.* at 45. It is currently impossible, however, to obtain such an order from a circuit court because the Supreme Court of Appeals of West Virginia has ruled that state law does not give circuit courts the authority to amend gender markers on birth certificates. *Id.* (citing *In re G.M.*, No. 19-0948, 2020 WL 3408589 (W. Va. June 18, 2020)).

Under current DHHR procedure, therefore, Plaintiffs argue that transgender West Virginians are forced to reveal their transgender status any time they provide their birth certificate to a third party. When a transgender West Virginian proffers a birth certificate with a gender marker that does not match the person's other identity documents or their appearance, their transgender status will be revealed ipso facto.

*Id.* at 6. Additionally, Plaintiffs argue that if a transgender man updates their birth certificate with their new name, their birth certificate will generally show a typical female name crossed out and replaced with a typical male name, which also ipso facto reveals the person's transgender status. *Id.*

Plaintiffs argue that DHHR's policy of refusing to provide transgender West Virginians with birth certificates that do not reveal their transgender status violates their constitutional rights to equal protection, due process, free expression, and to refrain from speaking. *Id.* at ¶¶ 87-113 They seek declaratory and injunctive relief declaring DHHR's policies unconstitutional and enjoining their enforcement.

## II. Discussion

A trial court has discretion to allow anonymity when it finds both that the plaintiff's privacy interests outweigh the benefit of keeping the proceedings open and that the plaintiff proceeding anonymously will not prejudice the defendant. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). In determining whether to allow a plaintiff to proceed anonymously, the trial court should consider: "(1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed

anonymously." *W. M. v. Braskem Am., Inc.*, No. 3:20-CV-00141, 2020 WL 1492544, at *2 (S.D. W. Va. Mar. 26, 2020) (Chambers, J.) (citing *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)). This list is not exhaustive, however, and a "trial court must 'carefully review *all* the circumstances of [the] case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Doe v. Alger*, 317 F.R.D. 37, 39–40 (W.D. Va. 2016) (quoting *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 734, 729 (W.D. Va. 2012).

Many courts have allowed transgender plaintiffs to proceed anonymously where their anonymity will not prejudice defendants. *E.g.*, *Doe v. City of Detroit*, No. 18-cv-11295, 2018 WL 3434345 (E.D. Mich. July 17, 2018) (collecting cases) ("Several courts have held that an individual's transgender identity can carry enough of a social stigma to overcome the presumption in favor of disclosure."). The first and second *Jacobson* factors weigh in favor of anonymity for transgender plaintiffs. First, a person's transgender status is a highly sensitive and personal matter. *Doe v. Blue Cross Blue Shield of Rhode Island*, 794 F. Supp. 72 (D.R.I. 1992) ("As a transsexual, plaintiff's privacy interest is both precious and fragile.") Second, transgender individuals often face verbal and physical harassment when forced to reveal their transgender status. Sandy E. James et al., *The Report of the 2015 U.S. Transgender Survey*, Nat'l Ctr. for Transgender Equal., 2 (December 2016), https://transequality.org/sites/default/files/docs/usts/USTS%20Full%20Report%20-%20FINAL%201.6.17.pdf.

The third factor, a plaintiff's age, favors anonymity the younger the plaintiff.

However, the plaintiff does not need to be a minor for this factor to weigh in favor of anonymity. *See e.g. Yacovelli v. Moeser*, No. 1:02CV546, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004) ("Although all of the Plaintiffs are now of the age of majority, college students may still possess the immaturity of adolescence."). The fourth factor favors anonymity where a plaintiff is suing a government entity. *W. M.*, 2020 WL 1492544, at *2 n. 2 ("when a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing.") (quoting *Yacovelli*, 2004 WL 1144183 at *8). Finally, where there is no prejudice to the defendants, the fifth factor favors anonymity.

Here, I find that Mr. Doe's privacy interest outweighs the public's interest in open proceedings. He is a transgender college student. He reported experiencing harassment when his high school classmates learned he was transgender and wishes to prevent similar harassment at the hands of his college classmates. Mr. Doe is suing a government agency and has revealed his identity to Defendants for the purposes of discovery. He simply seeks a protective order preventing Defendants from disseminating his name in public documents or public filings. The very nature of this action concerns the ability of transgender West Virginians to be able to control the situations in which they reveal their transgender status. To deny anonymity to Mr. Doe would deny him the remedy he seeks without ever reaching the merits of the case.

III. Conclusion

For these reasons, the Motion [ECF No. 2] is **GRANTED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 28, 2022

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE